IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

PATRICIA HOLLAND, THE SURVIVING
MOTHER OF KIP EUGENE HOLLAND AND
WAYNE HOLLAND AS THE
ADMINISTRATOR OF THE ESTATE OF
KIP EUGENE HOLLAND, DECEASED,

     Plaintiffs,

v.

CYPRESS INSURANCE COMPANY, AND
CHRISTOPHER A. RUNYUN, AS
ADMINISTRATOR OF THE ESTATE OF
JAMES WENDELL HARPER, DECEASED,

    Defendants.

CIVIL ACTION FILE
NUMBER: 2:17-CV-0120

## CONSOLIDATED PRETRIAL ORDER

1.

There are no motions or other maters pending for consideration by the court except as noted:

**Plaintiffs**: **The parties anticipate filing motions in limine prior to the trial of the case in an adequate amount of time so as not to delay the trial of the case.**

**Additionally, a dispute has not yet been resolved regarding Plaintiffs' request for the discovery deposition of Defendants' expert – Joel Milligan, M.D.  Dr. Milligan was identified as a potential expert at or near the close of discovery and Plaintiffs' counsel requested his deposition immediately.  Defendants have**

-1-

thus far refused to permit Dr. Milligan's discovery deposition to take place.

*Plaintiffs do not object to Defendants securing the discovery deposition of Matt Cook and exploring any discovery they deem necessary regarding attorneys fees and expenses so as not to delay the trial of the case.

<u>Defendants</u>:   Defendants filed a motion to file out of time and motion for reconsideration of Court's Order denying Defendants' motion for summary judgment on punitive damages. Defendants anticipate filing motions in limine by the deadline in the Court's Standing Order.

Defendants anticipate filing Motions in Limine seeking among other things to exclude evidence of Plaintiff's attorneys' fees because they did not identify such evidence during discovery. Defendants also see to exclude Plaintiff's presumed expert on attorneys' fees, Matt Cook, on the ground he was not identified during discovery.  Finally, Defendants seek to exclude Plaintiffs' bad faith claims against Defendant Cypress because they did not disclose such claims until after the close of evidence.

Joel Milligan, M.D. treated decedent James Harper. Defendants disclosed Dr. Milligan's identity at the beginning of this lawsuit. Both parties have copies of Milligan's records of Harper's treatment. Plaintiff could have taken Dr. Milligan's

**discovery deposition during the discovery period, but chose not to do so.**

2.

All discovery has been completed, unless otherwise noted, and the court will not consider any further motions to compel discovery. (Refer to LR 37.1B). Provided there is no resulting delay in readiness for trial, the parties shall, however, be permitted to take the depositions of any persons for the preservation of evidence and for use at trial.

**Plaintiffs: The aforementioned requested discovery deposition of Dr. Milligan has not yet been completed. Again, Plaintiffs have no objection to Defendants seeking and obtaining any necessary discovery regarding attorneys fees and expenses.**

**Defendants: Discovery is complete. Defendants anticipate taking evidentiary depositions of James L. Masdon, M.D., Joel Milligan, M.D., George Philip, M.D., and Larry R. Johnson, M.D.**

3.

Unless otherwise noted, the names of the parties as shown in the caption to this Order and the capacity in which they appear are correct and complete, and there is no question by any party as to the misjoinder or non-joinder of any parties.

**The parties are correctly named.**

4.

Unless otherwise noted, there is no question as to the jurisdiction of the court; jurisdiction is based upon the following code sections. (When there are multiple claims, list each claim and its jurisdictional basis separately.)

**Jurisdiction for all claims in this case is based on diversity of citizenship as prescribed by 28 U.S.C. § 1332.**

5.

The following individually-named attorneys are hereby designated as lead counsel for the parties:

Plaintiff:              **R. Shane Lazenby**
                        **Lazenby Law Group**
                        **380 Green Street**
                        **Gainesville, Georgia 30503**
                        **678-971-1166**
                        **678-971-1168 (facsimile)**
                        **shane@lazlawgroup.com**


Defendants:             **Grant B. Smith, Esq.**
                        **Dennis, Corry, Smith & Dixon, LLP**
                        **900 Circle 75 Parkway, Suite 900**
                        **Atlanta, Georgia 30339**
                        **(404) 926-3658**
                        **(404) 365-0134 facsimile**
                        **Gbs@dcplaw.com**

Other Parties: (specify) **None.**

6.

Normally, the plaintiff is entitled to open and close arguments to the jury. (Refer to LR39.3(B)(2)(b)). State below the

reasons, if any, why the plaintiff should not be permitted to open arguments to the jury.

**None.**

7.

The captioned case shall be tried **(__X__) to a jury** or (_____) to the court without a jury, or (_____) the right to trial by jury is disputed.

8.

State whether the parties request that the trial to a jury be bifurcated, i.e. that the same jury consider separately issues such as liability and damages. State briefly the reasons why trial should or should not be bifurcated.

**Plaintiffs:  Punitive damages and attorney's fees under O.C.G.A. § 13-6-11 are at issue.  Thus, bifurcation of these issues is appropriate.**

**Defendants:  Defendants are entitled to bifurcation under O.C.G.A. § 51-12-5.1(d).  Defendants request the Court to trifurcate the case so phase one would be liability, proximate cause and damages, phase two would be liability for punitive damages (if the Court denies Defendants' pending motion for reconsideration of Order denying summary judgment on punitive damages issue) and / or attorney's fees, and phase three would be amount of punitive damages and / or attorney's fees.  Defendants**

**anticipate moving in limine to exclude Plaintiff's bad faith claims against Defendant Cypress because they did not disclose such claims during discovery.  In the event the Court denies this motion, Defendants move for a separate trial on Plaintiff's bad faith claims against Cypress because evidence of insurance, Cypress' limits and what Cypress knew about Plaintiff's claims are potentially relevant and these would prejudice Defendant Estate of James Harper under Rule 411 of the Federal Rules of Civil Procedure.**

9.

Attached hereto as Attachment "A" and made a part of this order by reference are the questions which the parties request that the court propound to the jurors concerning their legal qualifications to serve.

**Defendants object to qualifying the jury as to Berkshire Hathaway Homestate Insurance Companies because Cypress Insurance Company issued the policy and Berkshire Hathaway Homestate Insurance Companies is not a party and does not have a direct financial interest in the outcome of the case.**

10.

Attached hereto as Attachment "B-1" are the general questions which plaintiff wishes to be propounded to the jurors on voir dire examination.

Attached hereto as Attachment "B-2" are the general questions which defendant wishes to be propounded to the jurors on voir dire examination.

Attached hereto as Attachment "B-3", "B-4", etc. are the general questions which the remaining parties, if any, wish to be propounded to the jurors on voir dire examination.

The court, shall question the prospective jurors as to their address and occupation and as to the occupation of a spouse, if any. Counsel may be permitted to ask follow-up questions on these matters. It shall not, therefore, be necessary for counsel to submit questions regarding these matters. The determination of whether the judge or counsel will propound general voir dire questions is a matter of courtroom policy which shall be established by each judge.

11.

State any objections to plaintiff's voir dire questions:

**Defendants object to question 42 on the ground it calls for the jury to pre-judge evidence and is argumentative.**

**Defendants object to question 43 on the ground it calls for the jury to pre-judge evidence and is argumentative.**

**Defendants object to question 44 on the ground it calls for the jury to pre-judge evidence and is argumentative.**

Defendants object to question 54 on the ground it is cumulative to paragraphs 8 and 9.

State any objections to defendant's voir dire questions:

Plaintiffs object to the introduction proposed by Defendants as it discusses "logging trucks." Logging trucks are not at issue in this case.

Plaintiffs object to voir dire questions 3 and 4 as they attempt to request the perspective jurors to pre-judge evidence and such evidence listed – i.e. Mr. Harper allegedly passing out – does not exist in this case beyond rank speculation.

Plaintiffs object to question #6 to the extent it is argumentative in the assertion that Plaintiffs' counsel "sue people for money."

Plaintiffs object to question #11 as it is not a voir dire question and is irrelevant to the facts of this case.

Plaintiffs object to question #17 as it is not reflective of the evidence in this case.

Plaintiffs object to questions #37, 62, 69, and 72 in that they are argumentative and irrelevant as to the questions of potential bias of perspective jurors.

Plaintiffs object to question #65 as it is not a question but a statement.

**Plaintiffs object to question #66 as to the characterization of "small trucking companies" attempts to insert financial circumstances into the case.**

**Plaintiffs object to question #73 as it is argumentative and seeks to have perspective jurors pre-judge the case.**

**Plaintiffs object to question #76 in that "Mrs. Feenaghty" is not a party or known witness in the case.  (Defendants took out Feenaghty and inserted Ms. Holland and Wayne Holland.)**

State any objections to the voir dire questions of the other parties, if any:

**Not applicable.**

12.

All civil cases to be tried wholly or in part by jury shall be tried before a jury consisting of not less than six (6) members, unless the parties stipulate otherwise. The parties must state in the space provided below the basis for any requests for additional strikes. Unless otherwise directed herein, each side as a group will be allowed the number of peremptory challenges as provided by 28 U.S.C. § 1870. See Fed.R.Civ.P. 47(b).

13.

State whether there is any pending related litigation. Describe briefly, including style and civil action number.

**None.**

14.

Attached hereto as Attachment "C" is plaintiff's outline of the case which includes a succinct factual summary of plaintiff's cause of action and which shall be neither argumentative nor recite evidence. All relevant rules, regulations, statutes, ordinances, and illustrative case law creating a specific legal duty relied upon by plaintiff shall be listed under a separate heading. In negligence cases, each and every act of negligence relied upon shall be separately listed. For each item of damage claimed, plaintiff shall separately provide the following information: (a) a brief description of the item claimed, for example, pain and suffering; (b) the dollar amount claimed; and (c) a citation to the law, rule, regulation, or any decision authorizing a recovery for that particular item of damage. Items of damage not identified in this manner shall not be recoverable.

**Defendants object to reading Plaintiff's Relevant Rules, Regulations, etc. because it exceeds the scope of this paragraph in the Pretrial Order. Defendants object to reading Plaintiff's Acts of Negligence, Items of Damages, citations to statutes and case law because it exceeds the scope of this paragraph in the Pretrial Order.**

15.

Attached hereto as Attachment "D" is the defendant's outline of the case which includes a succinct factual summary of all general, special, and affirmative defenses relied upon and which shall be neither argumentative nor recite evidence. All relevant rules, regulations, statutes, ordinances, and illustrative case law relied upon as creating a defense shall be listed under a separate heading. For any counterclaim, the defendant shall separately provide the following information for each item of damage claimed: (a) a brief description of the item claimed; (b) the dollar amount claimed; and (c) a citation to the law, rule, regulation, or any decision authorizing a recovery for that particular item of damage. Items of damage not identified in this manner shall not be recoverable.

**Plaintiffs object to Defendants' rendition of the case asserting "Mr. Harper had a coughing fit and lost consciousness" as no admissible evidence exists to prove such assertions beyond rank speculation.**

16.

Attached hereto as Attachment "E" are the facts stipulated by the parties. No further evidence will be required as to the facts contained in the stipulation and the stipulation may be read into evidence at the beginning of the trial or at such other time as is

appropriate in the trial of the case. It is the duty of counsel to cooperate fully with each other to identify all undisputed facts. A refusal to do so may result in the imposition of sanctions upon the non-cooperating counsel.

**Defendant agrees to Plaintiffs' stipulations 1, 2, 3, 5, 6, 7, 8, and 9.**

17.

The legal issues to be tried are as follows:

**<u>Plaintiffs</u>:**

1. **General Negligence in the State of Georgia to include all elements:  duty, breach, causation, and damages;**

2. **Negligence Per Se (O.C.G.A. §§ 40-6-48, 40-6-93, 40-6-390, 40-6-394);**

3. **Punitive Damages;**

4. **Estate Tort Claims to include pain and suffering and general damages as to Kip Holland, the decedent, medical bills and funeral expenses of Kip Holland;**

5. **Wrongful Death of Kip Holland, the decedent;**

6. **Expenses of Litigation (including costs, expenses, and attorneys' fees as per O.C.G.A. § 13-6-11);**

7. **Presentation of a frivolous defense and corresponding damages;**

**Defendants**: **Liability, proximate cause, and damages under Georgia common law of negligence; defenses of Act of God and sudden medical emergency; liability and damages for bad faith in the transaction under O.C.G.A. § 13-6-11; liability and damages for punitive damages under O.C.G.A. § 51-12-5.1 (if the Court denies Defendants' pending motion for reconsideration of Order denying summary judgment on punitive damages issue); whether Cypress Insurance Company is liable pursuant to Georgia's direct action statue; and whether Cypress is liable for bad faith.**

18.

Attached hereto as Attachment "F-1" for the plaintiff, Attachment "F-2" for the defendant, and Attachment "F-3", etc. for all other parties is a list of all the witnesses and their addresses for each party. The list must designate the witnesses whom the party will have present at trial and those witnesses whom the party may have present at trial. Expert (any witness who might express an opinion under Rule 702), impeachment and rebuttal witnesses whose use as a witness can be reasonably anticipated must be included. Each party shall also attach to the list a reasonable specific summary of the expected testimony of each expert witness.

All of the other parties may rely upon a representation by a designated party that a witness will be present unless notice to

the contrary is given ten (10) days prior to trial to allow the other party(s) to subpoena the witness or to obtain the witness' testimony by other means.  Witnesses who are not included on the witness list (including expert, impeachment and rebuttal witnesses whose use should have been reasonably anticipated) will not be permitted to testify, unless expressly authorized by court order based upon a showing that the failure to comply was justified.

**In Attachment F-"1", Defendants object to companies listed (not persons) identified Plaintiff, to Ron Kirk because Plaintiff never provided a Rule 26 disclosure for Mr. Kirk, and to Matt Cook on the ground Plaintiff failed to identify him in discovery or provide a Rule 26 disclosure for Mr. Cook.**

19.

Attached hereto as Attachment "G-1" for the plaintiff, "G-2" for the defendant, and "G3", etc. for all other parties are the typed lists of all documentary and physical evidence that will be tendered at trial. Learned treatises which are expected to be used at trial shall not be admitted as exhibits. Counsel are required, however, to identify all such treatises under a separate heading on the party's exhibit list.

Each party's exhibits shall be numbered serially, beginning with 1, and without the inclusion of any alphabetical or numerical subparts. Adequate space must be left on the left margin of each

party's exhibit list for court stamping purposes. A courtesy copy of each party's list must be submitted for use by the judge.

Prior to trial, counsel shall mark the exhibits as numbered on the attached lists by affixing numbered yellow stickers to plaintiff's exhibits, numbered blue stickers to defendant's exhibits, and numbered white stickers to joint exhibits. When there are multiple plaintiffs or defendants, the surname of the particular plaintiff or defendant shall be shown above the number on the stickers for that party's exhibits.

Specific objections to another party's exhibits must be typed on a separate page and must be attached to the exhibit list of the party against whom the objections are raised. Objections as to authenticity, privilege, competency, and, to the extent possible, relevancy of the exhibits shall be included. Any listed document to which an objection is not raised shall be deemed to have been stipulated as to authenticity by the parties and shall be admitted at trial without further proof of authenticity.

Unless otherwise noted, copies rather than originals of documentary evidence may be used at trial. Documentary or physical exhibits may not be submitted by counsel after filing of the pretrial order, except upon consent of all the parties or permission of the court. Exhibits so admitted must be numbered, inspected by counsel, and marked with stickers prior to trial.

-15-

Counsel shall familiarize themselves with all exhibits (and the numbering thereof) prior to trial. Counsel will not be afforded time during trial to examine exhibits that are or should have been listed.

**Plaintiffs object to the driving history of Mr. Harper as irrelevant and inadmissible when the jury considers the triable issues in this case.**

**Defendants object to the Cypress policy going into evidence. Defendants stipulate it may go into the record.   Rule 411.**

**Defendants object to Turner & Hamrick, LLC records as these are insurance policy underwriting documents for James W. Harper's policy with Cypress Insurance Company, which are immaterial, irrelevant and prejudicial effect substantially outweighs probative value. Rules 401, 402 and 403.**

**Defendants object to Alabama Law Enforcement Driver History Abstract.   Rule 401 not relevant and 403 prejudice outweighs probative value.**

**Defendants object to Records of Federal Motor Carrier Safety Administration because it is vague and the records are immaterial, irrelevant and prejudicial effect substantially outweighs probative value. Rules 401, 402 and 403.**

Defendants object to Records of James W. Harper from Version wireless. Rule 401 not relevant and 403 prejudice outweighs probative value.

Defendants object to Documentation of time spent and value of attorneys' fees and expenses because they were not produced in discovery.

Defendants object to Records of James W. Harper from Blue Cross Blue Shield as they inject financial circumstances and collateral source evidence, are immaterial, irrelevant and prejudicial effect substantially outweighs probative value. Rules 401, 402, 403.

Defendants object to the groups of documents identified by Plaintiffs, which do not allow Defendants sufficient notice of the specific documents or documents to be introduced from said groups. Defendants reserve the right to raise additional objections once Plaintiffs label and produce their anticipated trial exhibits.

20.

The following designated portions of the testimony of the persons listed below may be introduced by deposition:

**Plaintiffs**:

Larry Johnston, M.D.

1.)  Page 8, Line 16 through Page 13, Line 11

2.)   Page 14, Line 15 through Page 18, Line 2

3.)   Page 18, Line 4

4.)   Page 18, Line 9 through Page 55, Line 20

5.)   Page 56, Line 11 through Page 56, Line 14

6.)   Page 56, Line 19 through Page 65, Line 5

7.)   Page 67, Line 10 through Page 77, Line 13

8.)   Page 77, Line 23 through Page 90, Line 9

9.)   Page 90, Lines 12-17

10.) Page 90, Line 20 through Page 96, Line 20

11.) Page 97, Line 10 through Page 101, Line 4

12.) Page 101, Line 13 through Page 103, Line 15

13.) Page 104, Line 1 through Page 109, Line 15

14.) Page 110, Line 4 trough Page 111, Line 16

15.) Page 112, Line 2 through Page 115, Line 19

16.) Page 116, Line 9 through Page 118, Line 9

17.) Page 118, Line 11

18.) Page 118, Line 15 through Page 122, Line 19

19.) Page 123, Line 4 through Page 138, Line 7

Cynthia Annette Bell

1)    Page 3, Lines 13-15.

2)    Page 5, Lines 18-19.

3)    Page 10, Lines 10-13.

4)    Page 11, Lines 11-13.

5)    Page 14, Line 5 through Page 15, Line 2.

6)    Page 20 Lines 6 through 14.

7)    Page 21 Lines 6 through 25.

8)    Page 29 Lines 2 through 25.

9)    Page 30, Line 9 through Page 31, Line 2.

10)   Page 40, Line 17 through Page 41, Line 16.

11)   Page 42, Lines 13 through 16.

12)   Page 43, Line 19 through Page 44, Line 4.

13)   Page 44, Lines 10 through 14.

14)   Page 62, Line 4 through Page 65, Line 18.

15)   Page 75, Line 23 through Page 76, Line 13.

16)   Page 78, Line 22 through Page 79, Line 24.

17)   Page 81, Line 9 through Page 84, Line 14.

18)   Page 97, Line 4 through Page 98, Line 1.

Jonathan Spencer Munger

1)    Page 8, lines 3 through 19.

2)    Page 11, Line 3 through Page 12, Line 23.

3)    Page 21, Line 20 through Page 22, Line 3.

4)    Page 22, Line 9 through Page 23, Line 21.

5)    Page 24, lines 10 through 17.

6)    Page 26, lines 21 through 24.

7)    Page 27, Line 8 through Page 28, Line 18.

8)    Page 29, Lines 13-16.

9)    Page 32, Line 20 through Page 33, line 5.

10)   Page 36, Line 5 through Page 38, Line 24.

11)   Page 39, Line 7 through Page 57, Line 25.

12)   Page 62, Line 5 through Page 64, Line 7.

Kristin Fuller Howard

1)    Page 5, Lines 6 through 16.

2)    Page 9, Lines 12 through 14.

3)    Page 10, Line 10 through Page 12, Line 14.

4)    Page 16, Lines 6 through 24.

5)    Page 21, Line 5 through Page 22, Line 6.

6)    Page 22, Line 21 through Page 24, Line 10.

7)    Page 24, Line 22 through Page 25, Line 4.

8)    Page 30, Line 6 through Page 31, Line 18.

9)    Page 38, Line 3 through Page 40, Line 7.

Scott Carpenter

1)    Page 5, Lines 4 through 6.

2)    Page 5, Lines 17 through 18.

3)    Page 9, Line 23 through Page 10, Line 18.

4)    Page 12, Line 23 through Page 13, Line 14.

5)    Page 25, Lines 4 through Page 26, Line 3.

6)    Page 27, Line 22 through Page 28, Line 7.

7)    Page 29, Lines 3 through 22.

8)    Page 31, Lines 8 through 23.

9)    Page 32, line 19 through Page 33, Line 16.

10)   Page 34, Lines 8 through 18.

11)   Page 34, Line 22 through Page 35, Line 24.

12)   Page 38, Lines 6 through 25.

13)   Page 41, Line 9 through Page 42, Line 11.

14)   Page 43, Lines 17 through 22.

15)   Page 46, Line 22 through Page 47, Line 1.

16)   Page 50, Line 22 through page 51, Line 6.

**Dennis Myers**

1)    Page 3, Lines 19 through 21.

2)    Page 5, Lines 15 through 24.

3)    Page 10, Lines 8 through 14.

4)    Page 13, Line 11 through Page 14, Line 5.

5)    Page 16, Lines 7 through 22.

6)    Page 17, Lines 3 through 25.

7)    Page 18, Lines 18 through 22.

**Judith Harper**

1)    Page 4, Line 25 through Page 5, Line 1.

2)    Page 13, lines 15 through 23.

3)    Page 15, Lines 5 through 9.

4)    Page 14, line 16 through Page 15, Line 2.

5)    Page 18, line 23 through Page 19, Line 10.

6)    Page 21, Lines 7 through 10.

7)     Page 25, Lines 10 through 16.

8)     Page 25, Lines 20 through 23.

9)     Page 27, Lines 11 through 21.

10)    Page 31, Lines 7 through 17.

**Trina Glasgow**

1)     Page 9, Lines 4 through 6.

2)     Page 9, Lines 18 through 21.

3)     Page 14, Lines 7 through 13.

4)     Page 17, Lines 12 through 20.

5)     Page 26, Lines 14 through 17.

6)     Page 30, Lines 1 through 11.

7)     Page 32, Line 7 through Page 34, Line 6.

8)     Page 36, Lines 10 through 23.

9)     Page 38, Line 9 through Page 40, Line 6.

10)    Page 41, Line 12 through Page 42, Line 20.

11)    Page 44, Line 16 through Page 45, Line 8.

12)    Page 50, Line 13 through Page 51, Line 14.

13)    Page 60, Line 11 through Page 61, Line 2.

14)    Page 62, Lines 2 through 7.

15)    Page 64, Line 22 through Page 65, Line 7.

16)    Page 83, Line 22 through Page 84, Line 8.

**David Dare (Cypress 30b6)**

1.     Page 5, Line 21 through Page 6, Line 15

    2.    Page 11, Line 21 through Page 13, Line 14

    3.    Page 14, Line 1 through Page 15, Line 7

    4.    Page 15, Line 15 through Page 16, Line 22

    5.    Page 17, Line 4 through Page 21, Line 15

    6.    Page 21, Line 24 through Page 22, Line 22

    7.    Page 23, Line 14 through Page 27, Line 25

    8.    Page 28, Line 5 through Page 38, Line 5

    9.    Page 38, Lines 23 through Page 39, Line 25

    10.    Page 40, Line 18 through Page 48, Line 14

    11.    Page 49, Lines 1 through 13

    12.    Page 50, Line 17 through Page 53, Line 17

    13.    Page 54, Line 1 through Page 58, Line 7

**Michaela Aldredge (Cypress 30b6)**

    1.    Page 7, Line 25 through Page 8, Line 2.

    2.    Page 17, Line 7 through Page 19, Line 12.

    3.    Page 20, Lines 11 through Page 22, Line 8.

    4.    Page 22, Line 14 through Page 23, Line 13.

    5.    Page 29, Lines 2 through 7.

    6.    Page 31, Lines 4 through 18.

    7.    Page 54, Line 24 through Page 55, Line 19.

    8.    Page 69, Lines 4 through 21.

**Lew-Anne MacArthur**

    1.    Page 5, Lines 12 through 22.

2.    Page 7, Lines 12 through Page 23, Line 15.

3.    Page 24, Line 23 through Page 37, Line 24.

Patricia Holland

If necessary, Plaintiffs may seek to use the deposition of Patricia Holland EXCLUSIVE OF the following testimony:

1)    Page 19, Line 17 through Page 20, Line 3.

2)    Page 23, Lines 6 through 19.

3)    Page 37, Line 12 through Page 38, Line 5.

Wayne Holland

If necessary, Plaintiffs may seek to use the deposition of Wayne Holland EXCLUSIVE OF the following testimony:

1)    Page 26, Line 6 through Page 29, Line 20.

2)    Page 36, Line 15 through Page 37, Line 22.

3)    Page 43, Lines 12 through 15.

4)    Page 47, Lines 5 through 24.

5)    Page 53, Line 25 through Page 54, Line 4.

6)    Page 55, Lines 4 through Page 56, Line 12.

7)    Page 57, Lines 1 through 4.

8)    Page 59, Line 20 through Page 60, Line 12.

9)    Page 61, Lines 18 through 24.

10)   Page 63, Lines 19 through 22.

11)   Page 65, Lines 8 through 11.

12)   Page 75, Lines 22 through 24.

13)   Page 77, Lines 3 through 6.

14)   Page 79, Lines 16 through 20.

**Defendants**:   Consistent  with  the  Federal  Rules  of  Civil Procedure and Federal Rules of Evidence, Defendants may introduce the following:

1. **Stanley Harper**: pp. 4, l. 10 – 15; 4, l. 24 – 5, l. 8; 8, l. 1 – 11; 9, l. 5 – 15.

2. **Judith Harper**: pp. 4, l. 23 – 5, l. 1; 5, l. 17 – 24; 8, l. 25 – 9, l. 12; 13, l. 11 – 23; 14, l. 5 – 9; 14, l. 13 – 15, l. 22; 19, l. 24 – 20, l. 7; 20, l. 24 – 21, l. 6; 22, l. 13 – 19; 23, l. 5 – 24, l. 5; 24, l. 13 – 19; 25, l. 1 – 9; 31, l. 7 – 32, l. 2.

3. **Dennis Meyers**: pp. 3, l. 19 – 21; 4, l. 1 – 5; 5, l. 15 – 24; 6, l. 3 – 13; 7, l. 2 – 19; 8, l. 14 – 21; 9, l. 6 – 25; 10, l. 5 – 7; 11, l. 8 – 14; 14, l. 6 – 24; 16, l. 4 – 13; 16, l. 23 – 18, l. 8; 22, l. 22 – 23, l. 3.

4. **Cynthia Annette Bell**: pp. 5, l. 18 – 19; 10, l. 10 – 13; 14, l. 5 – 19; 18, l. 13 – 25; 20, l. 6 – 20; 21, l. 6 – 25; 24, l. 15 – 25, l. 9; 25, l. 24 – 26, l. 1; 26, l. 8 – 19; 27, l. 6 – 12; 27, l. 17 – 22; 29, l. 2 – 7; 40, l. 10 – 42, l. 16; 44, l. 10 – 45, l. 2; 53, l. 6 – 16; 53, l. 25 – 54, l. 7; 56, l. 13 – 57, l. 8; 57, l. 21 – 58, l. 4; 60, l. 17 – 61, l. 3; 63, l. 15 – 64, l. 18; 65, l. 7 – 18; 67, l. 23 – 25;

68, l. 18 – 24; 78, l. 10 – 15; 78, l. 22 – 81, l. 3; 81, l. 20 – 83, l. 14; 92, l. 1 – 93, l. 12; 93, l. 22 – 95, l. 10; 96, l. 22 – 98, l. 1; 98, l. 8 – 23; 99, l. 18 – 23; 100, l. 8 – 15.

5. <u>Lew-Anne McArthur</u>: pp. 5, l. 12 – 16; 7, l. 12 – 20; 8, l. 7 – 10, l. 4; 10, l. 12 – 19; 11, l. 1 – 15; 17, l. 9 – 18, l. 4; 19, l. 8 – 22; 20, l. 7 – 22, l. 7; 22, l. 14 – 17; 23, l. 6 – 9; 23, l. 14 – 18; 25, l. 11 – 22; 26, l. 6 – 15; 29, l. 4 – 8; 30, l. 12 – 16; 32, l. 18 – 33, l. 14.

6. <u>Kristen Howard</u>: pp. 5, l. 14 – 19; 8, l. 21 – 9, l. 5; 9, l. 22 – 12, l. 10; 13, l. 4 – 17; 13, l. 25 – 14, l. 17; 16, l. 6 – 17, l. 21; 18, l. 11 – 21; 19, l. 4 – 20, l. 4; 21, l. 5 – 12; 24, l. 22 – 25, l. 20; 26, l. 9 – 13; 29, l. 21 – 30, l. 8; 30, l. 19 – 32, l. 5; 35, l. 24 – 36, l. 7; 36, l. 25 – 37, l. 22; 38, l. 5 – 21; 39, l. 6 – 15.

7. <u>Scott Carpenter</u>: pp. 5, l. 17 – 18; 7, l. 11 – 24; 9, l. 23 – 10, l. 18; 18, l. 1 – 3; 19, l. 15 – 20, l. 8; 20, l. 21 – 21, l. 20; 24, l. 12 – 25, l. 3; 25, l. 10 – 26, l. 8; 26, l. 25 – 27, l. 12; 27, l. 22 – 28, l. 9; 28, l. 17 – 25; 29, l. 15 – 31, l. 1; 33, l. 9 – 34, l. 11; 34, l. 22 – 36, l. 14; 36, l. 23 – 37, l. 17; 40, l. 3 – 41, l. 8; 41, l. 18 – 24; 42, l. 12 – 22; 43, l. 5 – 25; 44, l. 4 – 23; 45, l. 5 – 48, l. 2; 49, l. 23 – 50, l. 5; 50, l. 19 – 25; 51, l. 17 – 22.

8. <u>Patricia Holland</u>: pp. 4, l. 6 – 8; 7, l. 13 – 17; 9, l. 2 –
7; 9, l. 23 – 10, l. 2; 15, l. 25 – 16, l. 23; 17, l. 4 – 18,
l. 8; 19, l. 17 – 20; 24, l. 8 – 12; 26, l. 16 – 27, l. 8;
29, l. 17 – 31, l. 1; 32, l. 12 – 20; 39, l. 23 – 40, l. 3;
45, l. 16 – 46, l. 4; 47, l. 3 – 20.

9. <u>Wayne Holland</u>: pp. 4, l. 6 – 7; 7, l. 15 – 20; 9, l. 17 – 10,
l. 1; 17, l. 23 – 18, l. 4; 30, l. 25 – 31, l. 10; 31, l. 13
– 32, l. 5; 33, l. 10 – 11; 33, l. 20 – 35, l.  13; 36, l. 15
– 37, l. 4; 38, l. 5 – 39, l. 1; 39, l. 12 – 20; 40, l. 10 –
19; 41, l. 8 – 25; 42, l. 13 – 43, l. 17; 45, l. 6 – 10; 47,
l. 9 – 24; 48, l. 16 – 23; 50, l. 24 – 51, l. 12; 52, l. 2 –
8; 57, l. 5 – 10; 74, l. 17 – 75, l. 14; 75, l. 25 – 76, l.
20.

10.    <u>Corporal Jonathan Munger</u>: pp. 8, l. 3 – 19; 11, l. 22 –
13, l. 6; 13, l. 25 – 14, l. 1; 15, l. 12 – 17, l. 21; 18, l.
6 – 20, l. 11; 20, l. 13 – 24, l. 17; 25, l. 8 – 15; 25, l.
24 – 29, l. 23; 30, l. 1 – 34, l. 13; 58, l. 4 – 15; 59, l.
2 – 61, l. 23.

11.    <u>Larry R. Johnston, M.D.</u>: pp. 120, l. 3 – 12; and 122, l.
14 – 128, l. 11 in the event the Court grants Defendants'
motions in limine related to Harper's hospital Drug Quick
Screen and alleged opioid use or Defendants' Motion to
Trifurcate.  If the Court denies the motions, then Defendants

designate pp. 120, l. 3 – 133, l. 7; and 137, l. 22 – 139, l. 18.

12.    **David Dare**: **Any portions required that in fairness should be considered with any part introduced by Plaintiffs.**

13.    **Michaela Aldredge**: **Any portions required that in fairness should be considered with any part introduced by Plaintiffs.**

**Defendants anticipate taking evidentiary depositions of James L. Masdon, M.D., Joel Milligan, M.D., George Philip, M.D., and Larry R. Johnson, M.D.**

Any objections to the depositions of the foregoing persons or to any questions or answers in the depositions shall be filed in writing no later than the day the case is first scheduled for trial. Objections not perfected in this manner will be deemed waived or abandoned. All depositions shall be reviewed by counsel and all extraneous and unnecessary matter, including non-essential colloquy of counsel, shall be deleted. Depositions, whether preserved by stenographic means or videotape, shall not go out with the jury.

21.

Attached hereto as Attachments "H-1" for the plaintiff, "H-2" for the defendant, and "H-3", etc. for other parties, are any trial briefs which counsel may wish to file containing citations

to legal authority concerning evidentiary questions and any other legal issues which counsel anticipate will arise during the trial of the case. Limitations, if any, regarding the format and length of trial briefs is a matter of individual practice which shall be established by each judge.

22.

In the event this is a case designated for trial to the court with a jury, requests for charge must be submitted no later than 9:30 a.m. on the date on which the case is calendared (or specially set) for trial. Requests which are not timely filed and which are not otherwise in compliance with LR 51.1, will not be considered. In addition, each party should attach to the requests to charge a short (not more than one (1) page) statement of that party's contentions, covering both claims and defenses, which the court may use in its charge to the jury.

Counsel are directed to refer to the latest edition of the Eleventh Circuit District Judges Association's Pattern Jury Instructions and Devitt and Blackmar's Federal Jury Practice and Instructions in preparing the requests to charge. For those issues not covered by the Pattern Instructions or Devitt and Blackmar, counsel are directed to extract the applicable legal principle (with minimum verbiage) from each cited authority.

23.

If counsel desire for the case to be submitted to the jury in a manner other than upon a general verdict, the form of submission agreed to by all counsel shall be shown in Attachment "I" to this Pretrial Order. If counsel cannot agree on a special form of submission, parties will propose their separate forms for the consideration of the court.

24.

Unless otherwise authorized by the court, arguments in all jury cases shall be limited to one-half hour for each side. Should any party desire any additional time for argument, the request should be noted (and explained) herein.

**The parties do not request additional time.**

25.

If the case is designated for trial to the court without a jury, counsel are directed to submit proposed finding of fact and conclusions of law not later than the opening of trial.

**Not applicable.**

26.

Pursuant to LR 16.3, lead counsel and persons possessing settlement authority to bind the parties met in person on _____ to discuss in good faith the possibility of settlement of this case. The court (_____) has or **(__X__) has not**

**discussed** settlement of this case with counsel. It appears at this time that there is:

(\_\_\_\_\_) A good possibility of settlement.

**(\_\_X\_\_) Some possibility of settlement.**

(\_\_\_\_\_) Little possibility of settlement.

(\_\_\_\_\_) No possibility of settlement.

27.

Unless otherwise noted, the court will not consider this case for a special setting, and it will be scheduled by the clerk in accordance with the normal practice of the court.

**Defendants request the Court consider a special setting.  As shown in the potential witness lists of the parties, many witnesses who may or are likely to give testimony at trial live in Alabama.**

28.

The plaintiffs estimate it will require  **3**  days to present their evidence.

The defendants estimate it will require  **1**  day to present their evidence.

It is estimated that the total trial time is  **4**  days.

29.

IT IS HEREBY ORDERED that the above constitutes the pretrial order for the above captioned case (\_\_\_\_\_) submitted by stipulation

of the parties or (_____) approved by the court after conference with the parties.

IT IS FURTHER ORDERED that the foregoing, including the attachments thereto, constitutes the pretrial order in the above case and that it supersedes the pleadings which are hereby amended to conform hereto and that this pretrial order shall not be amended except by Order of the court to prevent manifest injustice. Any attempt to reserve a right to amend or add to any part of the pretrial order after the pretrial order has been filed shall be invalid and of no effect and shall not be binding upon any party or the court, unless specifically authorized in writing by the court.

IT IS SO ORDERED, this _____ day of December, 2019.


_____
HON. RICHARD W. STORY
UNITED STATES DISTRICT JUDGE


Each of the undersigned counsel for the parties hereby consents to entry of the foregoing pretrial order, which has been prepared in accordance with the form pretrial order adopted by this court.

Respectfully submitted,

LAZENBY LAW GROUP, LLC

/s/ *R. Shane Lazenby*
R. SHANE LAZENBY, ESQ.
Georgia bar number 441670
Attorney for the Plaintiffs

PO Box 2875
Gainesville, GA 30503
(678) 971-1166
(678) 971-1168 (Facsimile)
shane@lazlawgroup.com

DENNIS, CORRY, SMITH & DIXON, L.L.P.

/s/ *Grant B. Smith*
GRANT B. SMITH, ESQ.
Georgia bar number 658345
For the Firm
Attorneys for Defendants

900 Circle 75 Parkway, Suite 1400
Atlanta, Georgia  30339
(404) 365-0102
(404) 365-0134 Facsimile
Gbs@dcplaw.com

## Attachment "A-1"

Attached hereto as Attachment "A-1" and made a part of this order by reference are the  questions which the parties request that the Court propound to the jurors concerning their legal  qualifications to serve.

1.   Anyone related, by blood or marriage, to Plaintiffs Patricia Holland and Wayne Holland;

2.   Anyone related, by blood or marriage, to Shane Lazenby;

3.   Anyone related, by blood or marriage, to Defendants' Decedent James Wendell Harper;

4.   Anyone related, by blood or marriage, to Defendant Christopher A. Runyun;

5.   Anyone related, by blood or marriage, to an Officer, Director, Shareholder or Member of Cypress Insurance Company;

6.   Anyone related, by blood or marriage, to an Officer, Director, Shareholder or Member of Berkshire Hathaway Homestate Companies;

7.   All persons over the age of 18;

8.   All persons United States Citizens;

9.   Anyone ever been convicted of a felony without all rights being restored?

**Attachment "A-2"**

1.  Are you related by blood or marriage to Kip Holland who lived in Gainesville and is deceased or his mother Patricia Holland who lives in Gainesville and is the plaintiff in this case?

2.  Are you related by blood or marriage to Ms. Holland's attorney Shane Lazenby with the Lazenby Law Group in Gainesville?

3.  Are you related by blood or marriage to James W. Harper who is deceased and his estate is a defendant in this case?

4.  Are you an officer, director, shareholder, employee or agent of Cypress Insurance Company?

**Attachment "B-1"**

Attached hereto as Attachment "B-1" are the general questions which Plaintiffs wish to be propounded to the jurors on voir dire examination.

1. This case involves a tractor-trailer striking a pedestrian on Browns Bridge Road near Mincey Marble on December 8, 2016. Does anyone believe you know anything about this case or that you have heard anything about this case before coming into Court today?

2. Do any of you know or are otherwise familiar with the law firm Dennis, Corry, Porter & Smith, LLP?

3. Do any of you know or are otherwise familiar with attorneys Grant Smith or Brent Estes, both out of Atlanta?

4. Do any of you know or are otherwise familiar with James Wendell ("JW") Harper?

5. Have any of you heard of a trucking company named JW Harper Farms, LLC out of Alabama?

6. Have any of you worked with or been employed by JW Harper Farms, LLC or James W. Harper out of Alabama?

7. Do any of you have any family and/or friends who are employed with or used to be employed with JW Harper Farms, LLC or James W. Harper out of Alabama?

8.   Do any of you currently work or have worked in the trucking industry?

9.   Have any of you had family and/or friends that either work or used to work in the trucking industry?

10.  If you are retired or are no longer employed, what kind of work did you do before you retired or stopped working?

11.  Who here has any experience or training in the following fields: (1) handling or investigating insurance claims or working for an insurance company, (2) working as an accountant or actuary, (3) medical training or experience, (4) law or legal profession, (5) truck driving, or (6) transportation industry.

12.  Has anyone here ever been an expert in a legal case of any kind before?

13.  Have any of you been sued in a civil case?

14.  Have any of you had family and/or friends who have been sued in a civil case?

15.  Have any of you ever had a claim filed against you, even if it did not progress to a formal lawsuit like what we have today?

16.  Have any of you had family and/or friends who had a claim filed against them, even if it did not progress to a formal lawsuit like what we have today?

17.  Is anyone a member of or have a family member or friend who is a member of any lawsuit abuse organizations or "tort reform" organizations or has given money to any such organizations?

18.  Have you or any of your relatives or anyone close to you ever been a defendant in a lawsuit or had a claim made against you or your company?

19.  Does anyone believe that there are too many lawsuits?

20.  Anyone here who would never bring a lawsuit for a personal injury claim no matter what the situation?

21.  Anyone here ever been involved in an automobile accident where someone was seriously injured?  Killed?

22.  Who here has some feelings against people who bring lawsuits?

23.  Who here has ever had a bad experience with the jury system?

24.  Who here has ever had an experience where a jury did not do the right thing or you felt justice was not served in a case?

25.  Does anyone believe that some damages awards you read or hear about are too high?

26.  Who here has some concerns about a system where a jury gets to decide the amount that should be awarded for a personal injury claim?

27.  Anyone here think a personal injury claim or wrongful death claim should only be limited to just economic losses such as

medical expenses and lost wages and nothing for human damages like pain and suffering or loss of the enjoyment of life?

28. Anyone here think there should be a cap or limitation on the amount a jury can award for human damages or the value of someone's life?

29. Anyone already have a cap in mind as to the most you would award for human damages, in other words no matter how bad the person has suffered I would never award more than x amount?

30. Anyone already have a cap in mind as to the most you would award for the value of a human life, in other words no matter what the evidence presented, I would never award more than x amount?

31. Does anyone believe that there should be overall caps on the total amount of damages that should be awarded in a personal injury or wrongful death case?

32. This is a civil case and the burden of proof in this case is not "beyond a reasonable doubt" like a criminal case. For the phase of the trial in which compensatory damages are sought by the plaintiff, the burden of proof that is less than "beyond a reasonable doubt" but is a "preponderance of the evidence" standard. Anyone have a problem with a reduced burden of proof for a civil case?

33. Anyone have a problem with a preponderance of the evidence

standard burden of proof, less than a "beyond a reasonable doubt" standard for criminal cases when deciding the amount of damages in a case?

34. Do you have children?

35. For those who have children, are any of your children adults?

36. Have you ever served on a jury before? If so:

    (a) When?

    (b) Where?

    (c) I What type of case?

    (d) Were you the foreperson?

37. Have you ever served on a jury that deadlocked and could not reach a verdict?

38. Have you ever served in the military?  If so, please state the branch and years of service.

39. Do you know any of the parties to the lawsuit – Patricia Holland of Gainesville, Wayne Holland of Gainesville, Christopher Runyan of Fort Payne, Alabama?

40. Do you know individuals who have intellectual disabilities?

41. Does anyone believe that if an intellectually disabled adult is killed as a result of the actions of another, that there should be some cap on the amount of damages that the deceased person's family can seek in a court of law?

42.  Does anyone believe that if an intellectually disabled adult is killed as a result of the actions of another, that just because that person was not employed, that the his or her life is worth less than an adult who may have a job and established earnings history?

43.  Is there anyone who thinks that because no amount of money can bring back the person killed, that it is not appropriate for the family of the person to seek damages in court?

44.  Is there anyone who thinks that because truck drivers drive for a living, that the manner in which they drive should not be questioned by lawyers or jurors who are not professional drivers?

45.  Is there anyone who believes that it is all right to go out of your lane of travel if it is only a small distance outside that lane of travel?

46.  Does anyone believe it is unreasonable to require drivers of commercial tractor trailers to be medically qualified by way of a medical examination by a doctor to drive tractor trailers on public roads?

47.  Do you believe it is unreasonable to require commercial tractor trailer drivers to provide medical examiners accurate responses to questions regarding their medical history even if it means they may lose their jobs?

48.  Do you or anyone close to you regularly walk as a pedestrian to various destinations whether as a means of exercise or travel?

49.  Do you believe that pedestrians walking on the shoulder of a roadway are responsible for their injuries should a vehicle leave its lane of travel and hit the pedestrian?

50.  Do you or any members of your family suffer from any medically diagnosed respiratory or breathing problems?

51.  Have you or a family member been the victim of a tragic accident?

52.  Have you ever been a Plaintiff or a Defendant in a civil case that resulted in a settlement or a jury trial?

53.  Would you have any personal or religious reservation about rendering a verdict for money damages if authorized by the law and facts in the case?

54.  This is a case involving a tractor trailer striking a pedestrian resulting in the pedestrian's death.  Is there anything in your background that would make it difficult for you to render a verdict that speaks the truth of this event?

55.  Are you or is any member of your family a lawyer?

56.  Have you ever studied law in college?

57.  Are you or is any member of your family in the trucking business?

58.  Are you or is any member of your family a member of law enforcement?

59.  Do you or does any member of your family hold a commercial driver's license?

60.  Do you or any members of your family drive tractor trailers?

61.  Are you or is any member of your family a medical care professional?

62.  For those who are or have family members who are medical care professionals, do any of you or your family members conduct federal motor carrier safety administration medical examinations for commercial truck drivers?

63.  Do any of you frequently travel Browns Bridge Road or Georgia Highway 369?

64.  Do you have any knowledge about this case or has anyone given you any information concerning this case?

65.  Do you know of any reason as to why it might be difficult for you to serve as a Juror in this case?

66.  Have you or someone you know ever been involved in a claim concerning Cypress Insurance Company?

67.  Are you or is any member of your family involved in the liability insurance business?

68.  Anyone here know anyone else on jury panel or in the courtroom?

69.  Is there anyone here who feels they cannot be impartial to the parties in this case for any reason?

70.  Does anyone know any of the following individuals who may be witnesses in this case? Scott Carpenter, Lew-Anne "Chris" McArthur, Kristen Fuller Howard, Bernard Davis, Cpl. Jonathan S. Munger of the Georgia State Patrol, Crystal Holland, Spencer Tracy Holland, Tommy Holland, Jeff Howorth, Billy Adams, Betty Suggs, Ritul Shah, Cynthia Annette Bell, Dennis Martin Myers, Henry Weatherford, Officer Andrew Bruce of the Georgia Motor Carrier Compliance Division, Larry Johnston, M.D., Joel Milligan, M.D., Christopher Runyan, Trina Glasgow, Judith Harper, Stanley Harper, Ronald E. Kirk, Phillip Mathis, Henry Weatherford, Pam Harper, Judy Harper, Steven Sears, Avery Evans, Judy Council, Johnny Kenimer, Lori Kenimer, Matt Cook, Wayne Reed and Kathy Loggins

71.  At the end of the case after all of the evidence is in, Judge Story will instruct you on the applicable law of the case. Will you accept his charge on the law and render a Verdict accordingly?

72.  Is there any member of the panel who would not accept the law as I give it to you in my instructions even if you disagree with the law?

73.  Is  there  any  member  of  the  panel  who  has  any  special
     disability  or  problem  that  would  make  serving  as  a  member  of
     this  jury  difficult  or  impossible?

74.  Does any juror hold any belief, religious or otherwise, which
     discourages or prevents jury service?

**Attachment "B-2"**

Ladies and gentlemen, I represent the estate of James W. Harper who died July 31, 2017 at age 77 from causes unrelated to the December 8, 2016 collision who died from causes unrelated to the collision.

I want to tell you in advance, you cannot hurt my feelings. If I didn't have a thick skin, I would not have gotten into this business.

So when I ask questions about how you feel about something like logging trucks I don't want you to hold back. Hit me with what you got.

1.   James W. Harper was a defendant in this case and he operated a trucking business called JW Farms from his home in Groveoak, Alabama which is about 100 miles northeast of Birmingham. Have any of you heard of Mr. Harper or his trucking business JW Farms?

2.   Mr. Harper is deceased. Would the fact that Mr. Harper is not here to testify cause any of you to tend to favor the Plaintiff instead of the Defendants if even a little bit?

3.   Mr. Harper was 76 years old at the time of the collision and we expect the evidence to show he suddenly and unexpectedly passed out. We expect the Plaintiff to

introduce evidence Mr. Harper had a number of health issues before the collision.  Without hearing more are any of you concerned you might tend to favor the Plaintiff even if just a little bit?

4.   Our defense in this case is based on the Act of God defense on the ground Mr. Harper did not have a history of passing out.  However, he had a number of health issues including cancer and COPD.  Without hearing more are any of you concerned you might tend to favor the Plaintiff even if just a little bit?

5.   Ms. Holland is represented by an excellent lawyer from here in Gainesville, Shane Lazenby with the Lazenby law Group at 1651 Thompson Bridge Road.  Do any of you know Mr. Lazenby or have you heard of him?  How?  Do any of you know anyone who works with Mr. Lazenby?  Who?  How?

6.   Do any of you, your family members, or close friends work for a plaintiff's law firm, that is a firm that sues people for money?  Who?  What kind of work?  How close are they to you?

7.   Did any of you know or did any of you hear of Kip Holland who was tragically killed in the December 8, 2016 collision or do you know or have you heard of his mother who is the plaintiff in this case Patricia Holland who lives at 4249

Holland Drive, in Gainesville?  How did/do you know?  How close are you?  Would it be difficult to be fair to both sides?

8.   Have any of your family or close friends been killed in a motor vehicle collision?  What kind of vehicle was the other vehicle?  Did you, your family or close friend file a lawsuit or make a claim?  Did you/they resolve the claim?

9.   Have any of you or your family members or close friends been seriously injured in a motor vehicle collision? What kind of vehicle was the other vehicle?  Did you, your family or close friend file lawsuit or make a claim?  Did you/they resolve the claim?

10.  Have any of you made a claim for money damages against someone whether it was for a motor vehicle collision, a premises liability claim or a worker's compensation claim? What happened? Did you, your family or close friend file lawsuit or make a claim?  Did you/they resolve the claim?

**INSURANCE**

Want to talk about insurance very briefly

11.  Cypress Insurance Company is defendant in this case which is very unusual in personal injury case.  Normally cannot talk about liability insurance in personal injury case but

because Mr. Harper was driving tractor trailer Ms. Holland can sue Mr. harper's insurer.

12. Do any of you think that because an insurance company is in the case you might be more likely even if just a little bit to favor Ms. Holland for any reason.

13. Have any of you had a bad experience with an insurance company?  What happened?  Would your experience make you favor even if just a little bit, Ms. Holland in this case?

**LAW ENFORCEMENT/LEGAL**

14. Do any of you know someone who has any law enforcement training or experience

15. Do any of you know someone who has legal training or experience

**MEDICAL CONDITIONS**

Expect evidence to show Mr. Harper had a number of medical conditions before the December 8, 2016 collision including throat cancer, Chronic Obstructive Pulmonary Disease also known as COPD, arthritis, and pneumonia.

16. Do any of you, your family or close friends suffer from: 1) throat cancer, 2) COPD, 3) arthritis, or 4) pneumonia.

17. Expect evidence to show Mr. Harper passed out before the collision.  The medical term for passing out is syncope.

Have any of you passed out without warning.  Do you know
anyone who passed out without warning?

18.  Have any of you, your family or close friends been
diagnosed with syncope or passing out?  Do you know the
cause?  Did it respond to treatment?  Are you able to
drive?

19.  Is there anyone on the panel who does not drive

**TRUCKS**

20.  How many of you are concerned about the safety of trucks
driving through Northeast Georgia

21.  How many of you have seen a truck do something unsafe

22.  For those of you who are concerned please rate your concern
from 1 to 10 with 1 being least and 10 being most

23.  What makes you say that

24.  How many of you are concerned about safety of trucking
companies in general

25.  For those of you who are concerned about the safety of
trucking companies, would that cause any of you to tend to
favor the Plaintiff instead of the Defendants if even a
little bit?

26.  My older daughter is a rule follower and sees things in
black and white, while my younger daughter is more of a

free spirit, would you say you are more like my older or younger daughter?

27. My older daughter tends to hold a grudge if someone makes her mad and my younger daughter tends to forgive more easily.  Would you say you are more like my older or younger daughter?

28. Have any of you had any major turmoil in your life in the past five years such as lose job, house fire, divorce or something that threw you for a loop?  Without going into too much detail, what happened?

29. Tell me about your work.  Does it involve driving?  Do you deal with shipping or trucking companies at work?  Any of those experiences make you tend to favor plaintiff.  Would it be difficult to treat Defendants same as Plaintiff in this case?

30. Have any of you suffered a significant financial hardship like losing job, bankruptcy, foreclosure, etc. in the past several years?   Is that hardship still affecting you?

31. Have any of you had an on the job injury and you made a claim for workers' compensation benefits?

32. Do any of you work in the education field?  What do?

33. Any of you work for house of worship or religious organization?

**MONEY**

34.  Do any of you feel like the amount of money awarded by
     todays' juries is too low?  Why feel that way?

35.  Mr. Harper was the only driver working as a truck driver at
     the time of the collision and his insurer is a party to the
     case.  I need to know if any of you feel that because the
     defendant is a trucking company that the Plaintiff is
     entitled to more money than if the defendant was an
     individual only.

36.  Are you inclined to give more money because an insurance
     company/trucking company is a defendant?

37.  Are you inclined to treat money you award in damages
     differently that you would when spending your own money?

38.  Would the plaintiff start out with a bit of an edge?  At
     the start of trial, would we both start at the 50-yard line
     or one would of us be farther up the field?

39.  If you were in my shoes, would you want a person with your
     views sitting as a juror?

40.  Have any of you caused a motor vehicle accident?   Any close
     family members or friends caused a motor vehicle accident?
     Did you do it on purpose or was it an accident?   Did you
     apologize?

41.  Have any of you been in a motor vehicle accident someone else caused?  Any close family members or friends been in accident someone else caused?

42.  Have any of you or your close family members been in a serious car accident?  What happened?  Anyone injured? Claim or Suit? Resolved?  Other driver or you admit fault?

43.  Have you or anyone you know ever been severely injured in a car accident in which the damage to the vehicles appeared relatively minor?

44.  Has someone close to you died as a result of a car accident?

45.  How many of you have lost a grandparent or great grandparent that you were close to?

46.  I lost my mother in December.  How many of you have lost a parent? Did your mom/dad have a good quality of life before they passed away?

47.  Have any of you lost a brother or sister?

48.  Have any of you lost a child?

49.  My sister lost her son at age 18.  Do any of you have any relatives or close friends who lost a child?

50.  For all of you who have suffered losses or had family or close friends with losses, how many of those were the result of some kind of accident?

51. What happened?  Make claim?  Responsible party admit fault?
    Able to resolve the claim?

52. How many of you have sued someone for personal injuries?  What
    happened?  Did Defendant admit fault?  Did you go to trial?
    Satisfied with settlement?

53. How many of you have made a claim for personal injuries?
    What happened?  Did Defendant admit fault?  Did you go to
    trial?  Satisfied with settlement?

54. How many of you have had a family member or close friend sue
    someone for personal injuries or make a claim for personal
    injuries?

55. Have any of you or anyone close to you been involved in any
    type of class action lawsuit? Explain.

56. Have any of you had an on the job injury and you made a claim
    for workers' compensation benefits?

57. Do any of you, your family or close friends work in the legal
    business involving litigation?  What do?  Who work for?  Do
    you work for one side or the other?

58. Have any of you ever helped care for a family member or friend
    who was disabled, seriously ill or seriously injured?
    Explain.

59. Do any of you have any training to be an actuary or in
    actuarial science?

60. Expect Plaintiffs to introduce one or more life expectancy tables.  Have any of you ever used life expectancy tables in work or life?

61. Any of you ever negotiated to buy a car?

62. There is a theory of negotiations called anchoring, it says if the person selling starts at a higher number even if the number is outrageous, ultimate result is higher, have any of you ever heard of that concept?

63. This is a tragic case and expect there to be significant sympathy for Ms. Patricia Holland and Mr. Wayne Holland, but expect the law in this case to be that you cannot base your decision on sympathy and expect plaintiff's lawyers in this case to tell you they do not want your sympathy.  Having said that and having heard a little bit about evidence we expect in this case, do any of you think you might be affected by feelings of sympathy for the Holland family?

64. Expect the law to be that you cannot award damages for plaintiffs Ms. Patricia Holland and Mr. Wayne Holland for their emotional distress from the death of Mr. Kip Holland, although they surely suffered greatly.  Do any of you think it would be difficult to eliminate distress from Ms. Patrician Holland and Mr. Wayne Holland's death in the damages award in this case?

65.   Want to talk about trucking companies and your impressions. First want to say I have a thick skin and you cannot hurt my feelings.  When I ask questions, I want to you really tell me how you feel.  Please do not feel like you have to hold back.

66.   I want to talk to you about your attitudes about small trucking companies like Mr. Harper's.  Many people feel like trucking companies are greedy and don't pay their fair share. Do any of you have similar feelings?

67.   You have heard Kip Holland was walking on the side of the highway and Mr. Harper's truck hit Kip Holland killing him. Does that make you mad?  Why?

68.   Wrongful death damages are not designed to compensate family members for grief over the loss of their loved one.  We are all sympathetic when someone loses a loved one.  Who is going to have trouble putting those feelings aside and not considering the family's grief when deciding wrongful death damages?

69.   If you are selected as a juror and you hear a fellow juror suggesting that the jury needs to award money for the family for their grief for the loss of their loved one, what would you do?

70.   Expect the law in this case to be that all persons stand equal under the law and your verdict should be the same regardless

whether the Estate of James Harper was the sole defendant as compared to Cypress Insurance Company.  Do any of you think the fact that one of the defendants is and insurance company that you might tend to award more money than if the defendant was an individual?

71.  Want to ask a general question, how many of you think $1 million is not a lot of money?

72.  How long do you think it takes the average household in the United States to earn $1 million?  $10 million?

73.  Because this is a wrongful death case, do you have a floor or dollar figure that you would not go below because this is a wrongful death case?

74.  How many of you tend to make decisions more on an emotional basis and how you feel compared to a more analytical basis?

75.  When you hear something bad happened to someone. Who tends to identify with those people by putting yourself in their shoes and thinking about how they must feel?

76.  Has anyone had something happen to them or a loved one that will make you feel likely to identify with the Ms. Holland or Wayne Holland or their family in this case?

## Attachment "C"

Attached hereto as Attachment "C" is plaintiffs' outline of the case which includes a succinct factual summary of plaintiffs' cause of action and which shall be neither argumentative nor recite evidence.

This is a case stemming from a tractor-trailer collision with a pedestrian resulting in the death of the pedestrian.  Plaintiffs are the legal representative and mother of the dead pedestrian. Given the unrelated death of the tractor trailer driver in the time since the collision at issue, the Defendants are the representative of the estate of the deceased driver of the tractor-trailer (an Alabama lawyer) who collided with the decedent, and the insurer of the tractor-trailer.

Kip Holland was a pedestrian walking eastbound on the shoulder/side of Georgia Highway 369/Brown's Bridge Road in Gainesville, Georgia on the afternoon of December 8, 2016 next to traffic traveling in an oncoming direction.  James W. Harper, or Defendant's Decedent, was driving a tractor-trailer westbound on Georgia Highway 369/Brown's Bridge Road at the same time.

Just as Defendant's Decedent Harper reached the location where Kip Holland was walking, Harper departed his lane of travel and entered the righthand shoulder of the roadway.  As Harper

departed the roadway on the right shoulder, his trailer began to rotate to the right side of the roadway as well.  The trailer overtook Kip Holland and continued over the top of his body. Simultaneously, the tractor/truck became detached from the trailer and rolled to a stop in a parking lot across the roadway.  Kip Holland was taken from the scene by ambulance to the hospital, but was pronounced dead shortly after his arrival.

Defendant Cypress Insurance Company provided liability insurance for the defendants' decedent's tractor trailer on December 8, 2016.  Defendants deny that Harper was responsible for the death of Kip Holland.

**Relevant Rules, Regulations, Statutes, Ordinances, and Illustrative Case Law Creating a Specific Legal Duty Relied Upon by Plaintiff**

O.C.G.A. § 13-6-11 (Expenses of Litigation)

O.C.G.A. § 40-6-48 (Driving on roadways laned for traffic)

O.C.G.A. § 40-6-93 (Drivers to Exercise Due Care)

O.C.G.A. § 40-6-390 (Reckless Driving)

O.C.G.A. § 40-6-394 (Serious Injury by Vehicle)

O.C.G.A. § 51-12-5.1 (Punitive Damages)

O.C.G.A. § 51-1-2 (Failure to Exercise Ordinary Care)

O.C.G.A. § 51-4-1 (Measure of damages in a wrongful death action)

O.C.G.A. § 9-11-68 (Presentation of a Frivolous Defense and Attorney's Fees for Failure to Settle)

49 CFR §391.41 (Physical Qualifications of Drivers)

49 CFR §392.3 (Ill or Fatigued Operator)

49 CFR §392.4 (Drugs and other substances)

49 CFR §395.8 (Driver's Record of Duty Status)

Malcolm v. Malcolm, 112 Ga.App. 151, 155 (1965) (all drivers are charged with the duty to exercise ordinary care under the circumstances)

Meeks v. Johnson, 112 Ga.App. 760 (1965) (the operator of a motor vehicle must exercise ordinary care in the control, speed and movements of his vehicle).

Sinclair Disposal Service, Inc. v. Ochoa, 265 Ga.App. 172 (2004) (in the absence of a valid defense, a violation of the Uniform Rules of the Road presents a prima facie case of negligence per se).

Whole Foods Market Group, Inc. v. Shepard, 333 Ga.App. 137 (2015) (a violation of O.C.G.A. § 40-6-48(a), which required the driver to drive his vehicle "as nearly as practicable entirely within a single lane" constitutes a violation of the Uniform Rules of the Road which establishes a prima facie case of negligence per se in the absence of a valid defense).

### *Acts of Negligence Relied Upon by Plaintiffs*

James W. Harper negligently drove his tractor-trailer outside his designated lane of travel, struck and killed Kip Holland who was walking on the shoulder of the roadway.

### *Items of Damages Claimed by Plaintiffs*

Plaintiffs allege that as a result of the negligence of James W. Harper, Plaintiffs are allowed to recover for the full value of the life of Kip Holland, the decedent, in an amount to be

determined by the enlightened conscience of a fair and impartial jury.  O.C.G.A. § 51-4-1.  Brock v. Wedincamp, 253 Ga.App. 275 (2002); OB-GYN Associates of Albany v. Littleton, 259 Ga. 663 (1989).

Plaintiffs allege that as a result of the negligence of James W. Harper, Plaintiff Wayne Holland, as Administrator of the Estate of Kip Holland, incurred expenses in the amount of $16,019.00 to Northeast Georgia Medical Center, $860.20 to Hall County EMS, and $1,904.00 to Gainesville Emergency Department Services.  O.C.G.A. §§ 51-4-5, 51-12-7, Bennett v. Haley, 132 Ga. App. 512 (1974).

Plaintiffs further allege that as a result of the negligence of James W. Harper, Plaintiff Wayne Holland, as Administrator of the Estate of Kip Holland, incurred funeral expenses for the decedent in the amount of $10,579.95 to Memorial Park Funeral Home. O.C.G.A. §§ 51-4-5, 51-12-7.

Plaintiffs further allege that as a result of the negligence of James W. Harper, Plaintiff Wayne Holland, is allowed to recover for Kip Holland's pain and suffering and general damages resulting from his physical injuries in an amount determined by the enlightened conscience of fair and impartial jurors.  O.C.G.A. § 51-12-4; OB-GYN Associates of Albany v. Littleton, 259 Ga. 663 (1989); Western, etc. Railroad Co. v. Young, 83 Ga. 512, 512 (1889); Redd v. Peters, 100 Ga. App. 316 (1959).

Plaintiffs further allege that they are entitled to recover the expenses of litigation as Defendant's Decedent acted in bad faith.  O.C.G.A. § 13-6-11.

Plaintiffs further allege that they are entitled to recover punitive damages as Defendant's Decedent acted in such a manner as to reflect an entire want of care which would raise the presumption of conscious indifference to consequences.  O.C.G.A. § 51-12-5.1.

Plaintiffs further allege that they are entitled to recover damages and the expenses of litigation to the extent Defendants present a frivolous defense, and Plaintiffs may also be entitled to collect on a claim for fees and expenses should a verdict be obtained in the requisite amount.  O.C.G.A. § 9-11-68.

## Attachment "D"

On December 8, 2016 James W. Harper was driving a tractor trailer west on Georgia Highway 369 in Gainesville, Georgia when he lost consciousness and drove off the road to his right. Tragically, Kip Holland was walking on the side of the road and Mr. Harper's trailer hit Mr. Holland killing him.

Investigating Georgia State Trooper, Corporate Jonathan S. Munger was not able to interview Mr. Harper at the accident scene, but interviewed Mr. Harper later that day at the hospital. Mr. Harper had a tracheostomy but gestured he was choking before the collision. Cpl. Munger gave an affidavit saying Mr. Harper began choking just before and immediately before the collision and later testified he did not know how long Mr. Harper started choking before the incident. A witness at the scene told Cpl. Munger Mr. Harper passed out.

When Cpl. Munger interviewed Mr. Harper, Mr. Harper had a subdural hematoma, a concussion and a broken shoulder blade. He developed pneumonia while in the hospital.

Kristin Fuller of Gainesville found Mr. Harper unconscious at the wheel of the truck immediately after the collision. Mr. Harper was a cancer survivor. His ear, nose, and throat specialist Jimmy Lee Masdon, M.D. and his cardiologist George Phillip, M.D. knew Mr. Harper was a truck driver and cleared him to drive before the

collision.  Dr. Masdon and Dr. Phillip saw no evidence Mr. Harper had a history of passing out or was likely to pass out while driving.

Mr. Harper made a mistake on his DOT questionnaire and failed to list certain medications and conditions, but these did not affect his ability to drive on the day of the accident and had nothing to do with his sudden and unexpected fainting spell just before the collision.  Mr. Harper had bilateral pneumonia in June of 2016 and had a severe cough related to that.

Mr. Harper's June 30, 2017 three-year Alabama Motor Vehicle Report shows a single failure to obey a traffic control device citation in February, 2016.

Defendants rely upon the following legal authority:

**(1)**  O.C.G.A. §§ 51-4-1, 51-4-2, 51-4-5; 40-6-391; 40-6-392.

**(2)**  "Where, as in the case sub judice, the medical evidence is that death was instantaneous, and there is no evidence the decedent exhibited consciousness of pain, recovery for decedent's pain and suffering is not permitted."  Grant v. Ga. Pacific Corp., 239 Ga. App. 748, 751 (1999).

**(3)**  Punitive damages are not available in a wrongful death action.  Roseberry v. Brooks, 218 Ga. App. 202 (1995); Turner v. Walker County, 200 Ga. App. 565 (1991).

**(4)** Punitive damages cannot be awarded against a Defendant decedent's estate like James Harper's Estate in this case. O.C.G.A. §§ 9-2-41, 51-12-5.1(a); Morris v. Duncan, 126 Ga. 467 (1906); Sightler v. Transus, Inc., 208 Ga. App. 173 (1993).

**(5) O.C.G.A. § 51-12-5.1(a):** "As used in this Code section, the term "punitive damages" is synonymous with the terms "vindictive damages," "exemplary damages," and other descriptions of additional damages awarded because of aggravating circumstances in order to penalize, punish, or deter a defendant."

**(6) O.C.G.A. § 51-12-5.1(b):** "Punitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." Mdc Blackshear v. Littell, 273 Ga. 169, 537 S.E.2d 356, 361 (Ga. 2000); Doctoroff v. Perez, 273 Ga. 560 (2005); Bradford v. Xerox Corp., 216 Ga. App. 83 (1994); Coker v. Culter, 208 Ga. App. 651 (1993); Carter v. Spells, 229 Ga. App. 441 (1997) ("punitive damages are recoverable under the statute where the collision resulted from a pattern or policy of dangerous

driving."); <u>Lewis v. D. Hays Trucking, Inc.</u>, 701 F. Supp. 2d 1300 (N. D. Ga. 2010).

**(7) O.C.G.A. § 51-12-5.1(c):** "Punitive damages shall be awarded not as compensation to a plaintiff but solely to punish, penalize, or deter a defendant."

**(8) O.C.G.A. § 51-12-5.1(d):**

"**(1)** An award of punitive damages must be specifically prayed for in a complaint. In any case in which punitive damages are claimed, the trier of fact shall first resolve from the evidence produced at trial whether an award of punitive damages shall be made. This finding shall be made specially through an appropriate form of verdict, along with the other required findings.

**(2)** If it is found that punitive damages are to be awarded, the trial shall immediately be recommenced in order to receive such evidence as is relevant to a decision regarding what amount of damages will be sufficient to deter, penalize, or punish the defendant in light of the circumstances of the case. It shall then be the duty of the trier of fact to set the amount to be awarded according to subsection (e), (f), or (g) of this Code section, as applicable."

**(9)  O.C.G.A.  §  51-12-5.1(g):** "For any tort action not provided for by subsection (e) or (f) of this Code section in which the trier of fact has determined that punitive damages are to be awarded, the amount which may be awarded in the case shall be limited to a maximum of $250,000.00."

**(10) Act of God / sudden medical emergency:** O.C.G.A. § 1-3-3(3); Lewis v. Smith, 238 Ga. App. 6 (1999); Battery v. Savannah Transit Authority, 123 Ga. App. 685 (1971), Eatmon v. Weeks, 323 Ga. App. 578 (2013); Halligan v. Broun, 285 Ga. App. 226 (2007).

**(11)** O.C.G.A. § 13-6-11 (bad faith in transaction); Computer Communications Specialists v. Hall, 188 Ga. App. 545, 547 (1988); see also, Adams v. Cowart, 224 Ga. 210 (1968); MARTA v. Mitchell, 289 Ga. App. 1 (2007).

**(12)** Doctoroff v. Perez, 273 Ga. App. 560, 561 (2005) ("Perez's actions in driving without a valid license were not the proximate cause of the accident here.  Rather, the collision occurred because Perez admittedly failed to yield to Doctoroff's oncoming car.").

**(13)** Federal Motor Carrier Safety Regulations, 49 C.F.R. § 382.303.

**(14)** Trifurcaton. Webster v. Boyett, 269 Ga. 191, 192 (1998) and Moresi v. Evans, 257 Ga. App. 670 (2002).

c) **Counterclaims:**

      Defendants did not file a counterclaim.

<u>**Attachment "E"**</u>

Attached hereto as Attachment "E" are the facts stipulated by the parties.

<u>**Plaintiff's Proposed Stipulated Facts**</u>

1.   Cypress Insurance Company had a policy in effect providing coverage to the tractor and trailer at issue in this case.

2.   The Cypress Insurance Company policy in effect providing coverage to the tractor and/or trailer at issue in this case bears policy number 03 TRM 014687-02.

3.   The Cypress Insurance Company policy in effect providing coverage to the tractor and/or trailer at issue in this case was in effect on, and included coverage for, incidents of December 8, 2016.

4.   Cypress Insurance Company became aware of the incident at issue on December 9, 2016.

5.   This civil action arises out of a motor vehicle collision that happened about 1:10 p.m. on December 8, 2016 on Georgia Highway 369/Browns Bridge Road in Gainesville, Hall County, Georgia.

6.   On the date of the incident in question, James W. Harper was traveling west on Georgia Highway 369/Browns Bridge Road when his tractor-trailer departed his lane of travel and entered the right shoulder of the roadway.

7.   At the same time on the date of the incident in question that James W. Harper was traveling west on Georgia Highway 369/Browns Bridge Road, Kip Holland was a pedestrian walking eastbound on the shoulder of the north side of the highway.

8.   When the tractor-trailer driven by James W. Harper departed his lane of travel and entered the right shoulder of the roadway, the trailer swung around and overtook Kip Holland.

9.   The collision in which the tractor trailer at issue in this case struck Kip Holland resulted in the death of Kip Holland.

**Attachment "F-1"**

Attached hereto as Attachment "F-1" for the plaintiff, is a list of all the witnesses and their addresses for each party.  The list must designate the witnesses whom the party will have present at trial and those witnesses whom the party may have present at trial.

The Plaintiffs will have present at trial the following persons:

Patricia Holland
c/o Lazenby Law Group
380 Green Street, NE
Gainesville, GA 30501

Wayne Holland
c/o Lazenby Law Group
380 Green Street, NE
Gainesville, GA 30501

The Plaintiffs may have present at trial the following persons:

Scott Carpenter
c/o First Baptist Church of Cumming
1597 Sawnee Drive
Cumming, GA 30040

Lew-Anne MacArthur
4550 Browns Bridge Road
Gainesville, GA 30504

Bernard Davis
Engineer Technology Director
Mincey Marble
4321 Browns Bridge Road
Gainesville, GA 30504

Kristen Fuller
Mincey Marble Employee

4321 Browns Bridge Road
Gainesville, GA 30504

Bernard Davis
Mincey Marble Employee
4321 Browns Bridge Road
Gainesville, GA 30504

Cpl. J. S. Munger
Georgia State Patrol
2000 Cleveland Highway
Gainesville, GA 30506

Crystal Holland
4249 Holland Drive
Gainesville, GA 30504

Tracy Holland
4249 Holland Drive
Gainesville, GA 30504

Tommy Holland
4249 Holland Drive
Gainesville, GA 30504

Jeff Howorth
4151 Browns Bridge Road
Gainesville, GA 30507

Wayne Reed
3912 Skyline Drive
Gainesville, GA 30501

Billy Adams
PO Box 907578
Gainesville, GA 30501

Betty Suggs
4866 Browns Bridge Road
Gainesville, GA 30504

Judy Council
1703 Creek Walk Lane
Oakwood, GA 30566

Ritul Shah
5201 Browns Bridge Road
Gainesville, GA 30504

Cynthia Annette Bell
64 AJ Keith Road
Chatsworth, GA

Dennis Martin Myers
41 Clyde Circle
Guntersville, AL 35976

Henry Weatherford
Flowery Branch, GA
770-967-1916

Officer Andrew Bruce
P:O Box 611
Lavonia, GA 30553

Ronald E. Kirk, P.E.
Research Engineers, Inc.
8821 Midway-West Road
Raleigh, NC 27617

Ms. Kathy M. Loggins
5707 Cool Springs Road
Gainesville, GA 30506

Phillip Mathis
Browns Bridge Road
Gainesville, GA

Henry Weatherford
Flowery Branch, GA

Pam Harper
2101 Briarwood Avenue SW, Apt. 507
Fort Payne, AL 35967

Dave Dare
Cypress Insurance Company
c/o Dennis, Corry, Porter & Smith, LLP
Fourteen Piedmont Center, Suite 900
3535 Piedmont Road

Atlanta, GA 30305

Larry Johnston, M.D.
603 Medical Parkway
Boaz, AL 35957.

Joel Milligan, M.D.
Lakeside Clinic, LLC
2337 Homer Clayton Dr.
Guntersville, AL 35976

Adair de Berry-Carlisle, DO
5901 Laguna Cliff Lane
Austin, TX 78734

Steven Sears
Hall County EMS
470 Crescent Drive
Gainesville, GA 30501

Avery Evans
Hall County EMS
470 Crescent Drive
Gainesville, GA 30501

Physicians and Nurses of
Northeast Georgia Medical Center
743 Spring Street
Gainesville, GA 30501

Cargill, Inc.
862 W. Ridge Rd.
Gainesville, GA 30501

Frank Jenkins Trucking, LLC
670 Welcome Bethel Road
Albertville, AL 35950

George Philip, M.D.
Heart Center
2525 US Highway 431, Suite 250
Boaz, AL 35957

Gideon Ewing, M.D.
Marshall Cancer Center

11491 US Highway 431
Albertville, AL 35950

Hall County EMS
470 Crescent Drive
Gainesville, GA 30501

James Lee Masden, M.D.
Masden ENT
7938 Alabama Hwy. 69, Suite 350
Guntersville, AL 35976

Thomas W. Downes, M.D.
Marshall Surgical Clinic
2525 US 431, Suite 170
Boaz, AL 35957

WT Wilson Funeral Chapel
2226 Main Street, Shiloh
Rainsville, AL 35986

James T. Payne, M.D.
2505 US-431
Boaz, AL 35957

Raymond Ufford, M.D.
3442 Us Highway 431
Albertville, AL 35950

Complete Care, Inc.
PO Box 681009
Fort Payne, AL 35968

All Star Medical, LLC
2407 Memorial Parkway, SW, Suite 1
Huntsville, AL 35801

Berchert Chiropractic, P.C.
1231 Gunter Avenue
Guntersville, AL 35976

Haralson Drug Co., Inc.
1941 Patterson St.
Guntersville, AL 35976

CVS/Pharmacy Privacy Office
One CVS Drive
Woonsocket, RI 02895

Walmart Pharmacy
702 SW 8th St.
Bentonville, AR 72716

Foodland Pharmacy
1402 County Park Road
Scottsboro, AL 35769

Tyson Foods, Inc.,
Legal Department
2200 W. Don Tyson Parkway
Springdale, AR 72762

Wayne Farms, LLC
4110 Continental Dr.
Oakwood, GA 30566

Turner & Hamrick, Inc.,
440 Old Hwy 231 N
Troy, AL 36081

Peak Leasing, LLC
PO Box 942
Jefferson, ME 04348

Marshall Medical Centers
2505 US Highway 431
Boaz, AL 35957

Sunscript Pharmacy
6767 Old Madison Pike, Suite 220
Huntsville, AL 35806

Claude L. Kinzer, MD
810 Franklin St SE,
Huntsville, AL 35801

William S. Nixon, M.D.
Lakeside Clinic
2337 Homer Clayton Drive
Guntersville, AL 35976

Trina Glasgow
618 Welcome Bethel Road,
Albertville, AL 35950

Judith Harper
5917 County Road 76
Grove Oak, AL 35975

Stanley Harper
5917 County Road 76
Grove Oak, AL 35975

Johnny Kenimer
3282 Parker Road
Gainesville, GA  30504

Laura Kenimer
3282 Parker Road
Gainesville, GA  30504

Matt Cook
Cook Law Group
800 Jesse Jewell Pkwy, Ste. 100
Gainesville, GA  30501

### Attachment "F-2"

Defendants will have present at trial:  None.

Defendants may have present at trial:

1.   A representative of Defendant Cypress Insurance Company;

2.   Defendant Christopher Runyan, as administrator of the Estate of James Wendell Harper, deceased;

3.   Corporal Jonathan Munger, Georgia State Patrol, 159 Industrial Boulevard, Blue Ridge, Georgia 30513 (investigating trooper);

4.   George Philip, M.D., Heart Center, 2525 U.S. Highway 431, Suite 250, Boaz, Alabama 35957 (Harper's treating cardiologist);

5.   James Lee Masdon, M.D., Masdon ENT & Facial Plastic Surgery, 7938 Alabama Highway 69, Suite 340, Guntersville, Alabama 35976 (Harper's treating ENT and cancer physician);

6.   Joel Milligan, M.D., Lakeside Clinic, LLC, 2337 Homer Clayton Drive, Guntersville, Alabama 35976 (Harper's treating family medicine physician);

7.   Gideon Ewing, M.D., Marshall Cancer Center, 11491 U.S. Highway 431, Albertville, Alabama 35950 (Harper's treating cancer physician);

8.   Dr. Christopher Manganaris, Pulmonary & Sleep Associates of Marshall County, MMC North Medical Plaza, 7938 Alabama Hwy

      69, Suite 201, Guntersville, Alabama 35976 (Harper's physician);

9.   Larry R. Johnson, M.D., 605B Medical Center Parkway, Boaz, Alabama 35957 (Harper's physician for DOT physical);

10.  Trina Glasgow, Frank Jenkins Trucking, 618 Welcome Bethel Road, Albertville, Alabama;

11.  Cynthia Annette Bell, 64 AJ Keith Road, Chatsworth, Georgia;

12.  Stanley Harper, 5917 County Road 76, Grove Oak, Alabama 35975;

13.  Judith Harper, 5917 County Road 76, Grove Oak, Alabama 35975;

14.  Dennis Martin Myers, 41 Clyde Circle, Guntersville, Alabama 35976;

15.  Kristen Amanda Howard, 4321 Browns Bridge Road, Gainesville, Georgia 30504 (Mincey Marble employee);

16.  Lew-Anne Claire MacArthur, 4550 Browns Bridge Road, Gainesville, Georgia 30504 (across from Mincey Marble);

17.  Scott Carpenter, 1235 Summerfield Drive, Cumming, Georgia (witness);

Defendants have not identified a specially retained expert witness subject to the disclosure requirements of F.R.C.P., Rule 26(a)(2)(B). The medical providers of James Harper, deceased, are expected to testify consistent with their treatment of Harper as

documented in the provider's medical records, which have been
produced during discovery to all parties in this lawsuit.

**Attachment "G-1"**

Attached hereto as Attachment "G-1" for the plaintiffs are the typed lists of all documentary and physical evidence that will be tendered at trial.

| Description | Tendered | Admitted |
|---|---|---|
| Cypress Insurance Policy from Policy 03-TRM 014687 – 02 | | |
| State of Georgia Traffic Crash Report | | |
| Georgia Department of Public Safety Photographs | | |
| Georgia Department of Public Safety Videos | | |
| State of Georgia Motor Carrier Compliance Division Report | | |
| Georgia Department of Public Safety CAD Response Report | | |
| Georgia Department of Public Safety 911 Tape | | |
| Security Videos of Mincey Marble from December 8, 2016 | | |
| Photos of the tractor-trailer vehicle inspection secured by Ron Kirk | | |
| Alabama Law Enforcement Driver History Abstract | | |
| Alabama Application for Disability Permits | | |
| Georgia Death Certificate for Eugene Kip Holland | | |
| Records of Memorial Park Funeral Home | | |
| Bill of Lading for the Load of December 8, 2016 transported by James W. Harper | | |
| Photographs of Georgia Highway 369 leading up to the scene of the collision westbound from Georgia Highway 53 | | |
| Photographs of the scene of the collision | | |

| | | |
|---|---|---|
| Records of the Federal Motor Carrier Safety Administration related to James W. Harper | | |
| FMCSA Medical Examiner Handbook | | |
| Log Book entries of James W. Harper | | |
| Medical Records of Kip Eugene Holland from Gainesville Emergency Department Services | | |
| Medical Records of Kip Eugene Holland Hall County EMS | | |
| Medical Records of Kip Eugene Holland from Northeast Georgia Medical Center | | |
| Medical Records of James W. Harper from Masden ENT | | |
| Medical Records of James W. Harper from Thomas Downes, M.D. – Marshall Surgical | | |
| Medical Records of James W. Harper from Hall County EMS | | |
| Medical Records of James W. Harper from Joel C. Milligan, M.D. – Lakeside Clinic | | |
| Medical Records of James W. Harper from Larry Johnston, M.D. | | |
| Medical Records of James W. Harper from Marshall Medical Center | | |
| Medical Records of James W. Harper from Haralson Drug | | |
| Medical Records of James W. Harper from Berchert Chiropractic | | |
| Medical Records of James W. Harper from Allstar Medical | | |

| | | |
|---|---|---|
| Medical Records of James W. Harper from Marshall Medical Center Hospital | | |
| Medical Records of James W. Harper from Walmart Pharmacy | | |
| Medical Records of James W. Harper from George Phillip, M.D. – Heart Center | | |
| Medical Records of James W. Harper from Foodland Pharmacy | | |
| Medical Records of James W. Harper from Complete Care, Inc. | | |
| Medical Records of James W. Harper from James T. Payne, M.D. and Gideon Ewing, M.D. at Marshall Medical Center | | |
| Medical Records of James W. Harper from Northeast Georgia Medical Center | | |
| Medical Records of James W. Harper from Sunscript Pharmacy | | |
| Records of James W. Harper from BlueCross Blue Shield | | |
| Records of Cargill, Inc. | | |
| Records of Peak Leasing, LLC | | |
| Records of Turner & Hamrick, LLC | | |
| Records of James W. Harper from Verizon Wireless | | |
| Records of James W. Harper from W.T. Wilson Funeral Chapel | | |
| Photographs and memorabilia of the life of Kip Holland | | |

| | | |
|---|---|---|
| Documentation of time spent and value of Plaintiffs' attorney's fees and expenses | | |

**Attachment "G-2"**

**(1)** State of Georgia Traffic Crash Report by Cpl. Jonathan Munger

**(2)** State of Georgia Motor Carrier Compliance Division Report

**(3)** Georgia Department of Public Safety photographs

**(4)** Georgia Department of Public Safety videos

**(5)** Georgia Department of Public Safety CAD Response Report

**(6)** Georgia Department of Public Safety 911 recordings

**(7)** Mincey Marble security video

**(8)** Photographs of James Wendell Harper's tractor and trailer

**(9)** Photographs of Georgia Highway 360 / Browns Bridge Road in the area of the accident

**(10)** Affidavit of Cpl. Jonathan Munger

**(11)** Certified copies of James Harper's selected medical records from the following providers:

```
a. Northeast Georgia Medical Center;
b. Lakeside Clinic, LLC / Dr. Joel Milligan;
c. Masdon ENT / Dr. James Lee Masdon;
d. Heart Center / Dr. George Philip;
e. Marshall Cancer Center / Dr. Gideon Ewing;
f. Marshall Medical Center;
g. Larry Johnston, M.D.;
h. Pulmonary & Sleep Associates of Marshall County;
i. Hall County EMS / Ambulance Services;
j. Marshall Surgical Clinic / Thomas W. Downes, M.D.;
k. James T. Payne, M.D.;
l. Raymond Ufford, M.D.;
m. Complete Care, Inc.;
n. Allstar Medical, LLC;
```

      o. Bechert Chiropractic, P.C.;
      p. Haralson Drug Co., Inc.;
      q. Walmart Pharmacy;
      r. Sunscript Pharmacy;
      s. Claude L. Kinzer, M.D.;
      t. Foodland Pharmacy;

**(12)** Certified copies of Kip Holland's selected medical records from the following providers:

      a. Northeast Georgia Medical Center;
      b. Hall County EMS / Ambulance Services;
      c. Gainesville Emergency Department Services;

**(13)** July 29, 2016 DOT clearance letter from George Philip, M.D.

**(14)** August 1, 2016 medical clearance letter from James Lee Masdon, M.D.

**(15)** James W. Harper's DOT August 1, 2016 medical certificate

**(16)** James W. Harper's Motor Vehicle Records three-year report of driving history from Alabama

**(17)** Cargill Truck Bill of Lading dated 12/8/2016

**(18)** Plaintiff's responses to Harper's first interrogatories and request for production of documents

**Attachment "H-1"**

**Favor-based Challenges and Rehabilitation of Potential Jurors**

It is the duty of the trial court to ensure cases "are tried by a jury such that not even the suspicion of bias (leaning) or prejudice (prejudgment) can attach to any member thereof." Temples v. Central of Ga. Ry. Co., 15 Ga. App. 115 (1914) (quoting Jacobs v. State, 1 Ga. App. 519 (1907)).  Accordingly, the jury panel must be cleansed of individual jurors who may be unfairly inclined for or against any party to the suit.  The voir dire process encompasses a system of challenges designed to exclude potential jurors harboring such bias or prejudgment from the final jury panel.  The challenge of a juror for suspicion of bias or partiality is done either as a principal challenge for cause or a challenge for favor.  See Smith v. Folger, 237 Ga. App. 888, 889 (1999).

Principal challenges for cause are made whenever it appears that a potential juror is disqualified as a matter of law.  "A principal challenge is such, where the cause assigned carries with it *prima facie* evident marks of suspicion, either of malice or favor," such as a disqualifying family relationship to a party or a financial interest in the outcome of the case.  Id. at 889.  In Georgia, principle challenges are set forth by statute.  O.C.G.A. §§ 15-12-135, 163.  More insidious and difficult to discern are

the favor-based reasons for challenge.  In determining whether to strike a potential juror on a favor-based challenge, the court sits as the trier of fact, determining whether the evidence presented concerning a juror's potential bias would prevent that juror from acting as an impartial member of the panel.  To date, no appellate decision exists in which a trial court was reversed for excusing a potential juror for cause.

On the other hand, in the landmark decision of Kim v. Walls, 275 Ga. 177 (2002), in an opinion authored by former Chief Justice Hugh P. Thompson, the Georgia Supreme Court reversed a trial court for abuse of discretion when it failed to excuse a juror on a favor-based challenge.  See also Sellers v. Burrowes, 283 Ga. App. 505 (2007); Guoth v. Hamilton, 273 Ga. App. 435 (2005); and Meintzer v. Weinberg, 212 Ga. App. 307 (1994).  Walls was a medical negligence case tried before a jury that returned a verdict in favor of the defendant doctor.  On appeal, the plaintiff contended that the trial court abused its discretion for failing to grant a favor-based challenge for cause concerning a juror who was a nurse at the same hospital and enjoyed a professional relationship with the defendant doctor.  In response to *voir dire* questions posed to her by plaintiff's counsel, the nurse juror admitted that she hoped the verdict came out in favor of her co-worker doctor.  She also admitted that her mind was not evenly balanced between the parties.

Counsel moved to excuse the juror for favor.  The trial court posed a rehabilitation question, and the biased juror responded that she could be fair.  Based on that response, the trial court retained the juror, forcing plaintiff's counsel to expend a precious peremptory challenge.  The Court of Appeals (later affirmed by the Georgia Supreme Court) concluded that the trial court abused its discretion by failing to excuse the juror, even though the juror responded appropriately to the "rehabilitation" question.

Furthermore, the Court of Appeals announced that a positive response to the customary use of the rehabilitation question is not sufficient to cure the error inherent in leaving a juror who has indicated bias or prejudice against a party, the subject matter, or their counsel on the jury:

> [W]e disagree with the way that the 'rehabilitation' question has become something of a talisman relied upon by trial and appellate judges to justify retaining biased jurors.  Especially when the better practice is for judges simply to use their discretion to remove such partial jurors, even when the question of a particular juror's impartiality is a very close call.

Walls at 260.  The Court of Appeals further advised that "[a] trial judge should err on the side of caution by dismissing, rather than trying to rehabilitate, biased jurors because, in reality, the

judge is the only person in the courtroom whose primary concern, indeed primary duty, is to ensure the selection of a fair and impartial jury. . . .." Id.

The Walls decisions are simply a restatement of the fundamental principles historically serving as the foundation of the jury system. "Running through the entire fabric of our Georgia decisions is a thread which plainly indicates that the broad general principle intended to be applied in every case is that each juror shall be so free from either prejudice or bias as to guarantee the inviolability of an impartial trial." Temples, 15 Ga. App. at 115.

As the parties in this case endeavor to impanel an impartial jury, Plaintiffs respectfully request that the Court and counsel bear in mind the principles set forth in the Walls decisions. Furthermore, to meet the mandates of the Walls decisions, Plaintiffs request a panel of no less than thirty-five (35) jurors for *voir dire* so the Court will be able to excuse any prospective jurors who raise any reasonable apprehension regarding their ability to be fair while ensuring that the parties are left with a full panel of competent and impartial jurors from which to strike.

**<u>Attachment "I-1"</u>**

If counsel desire for the case to be submitted to the jury in a manner other than upon a general verdict, the form of submission agreed to by all counsel shall be shown in Attachment "I" to this Pretrial Order.

Plaintiffs propose the following Verdict Form.

**VERDICT**

1.

_____ We, the jury, find in favor of the Plaintiffs in the amount of:

$_____ for the Estate of Kip Eugene Holland.

$_____ for the full value of the life of Kip Eugene Holland.

OR

_____ We, the jury, find in favor of the Defendant and award no damages to Plaintiffs.

FOR THE SECOND PHASE OF THE TRIAL RELATED TO BAD FAITH ATTORNEYS FEES AND EXPENSES.

Did the Defendant's Decedent act in bad faith in the underlying transaction regarding the tractor trailer collision?

_____ yes or _____ no

If your answer is NO, please stop and return this verdict form to the Court.  If your answer is YES, please continue to the question below.

What reasonable and necessary amount of attorney's fees and expenses to Plaintiffs do you award:  $_____

FOR THE THIRD PHASE OF THE TRIAL RELATED TO PUNITIVE DAMAGES.

Do you find that punitive damages should be awarded?

_____ yes or _____ no

If your answer is NO, please stop and return this verdict form to the Court.  If your answer is YES, please continue to the question below.

What amount of punitive damages do you award? $_____,

This _____ day of _____, 2019.

_____
Jury foreperson

## CERTIFICATE OF SERVICE

I electronically filed this **PRETRIAL ORDER** with the Clerk of
Court using the CM/ECF system which will automatically send email
notification of such filing to the following attorneys of record:

    R. Shane Lazenby, Esq.
    Lazenby Law Group
    1651 Thompson Bridge Road
    P.O. Box 2875
    Gainesville, GA  30503

I mailed by United States Postal Service the document to the
following non-CM/ECF participants:  None.

This 17th day of December, 2019

                        /s/ *Grant B. Smith*
                        GRANT B. SMITH, ESQ.
                        For the Firm


THIS IS TO CERTIFY that, pursuant to LR 5.1B, NDGa., the above
document was prepared in Courier New, 12 pt.


54-13007(GBS)